# UNITED STATES DISTRICT COURT

for the
Eastern District of Texas

| | |
|---|---|
| ERIKA RASCON<br>*Plaintiff,*<br><br>  **-v-**<br><br>ROCKWALL COUNTY, TEXAS;<br>DEPUTY JEFFREY WALLS, in his<br>individual capacity; CITY OF WYLIE;<br>JOHN/JANE DOE DEPUTIES 1–5, in their<br>individual capacities; and JOHN/JANE<br>DOE WYLIE POLICE OFFICERS 1–5,in<br>their individual capacities,<br>*Defendants.* | Case No._____<br><br>**COMPLAINT AND JURY DEMAND** |

## CIVIL ACTION

*This action alleges, inter alia, violations of the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, arising from the unlawful detention, excessive and medically dangerous restraint of Plaintiff Erika Rascon, the failure of Rockwall County deputies and Wylie Police Department officers to intervene, and the deliberate indifference to Plaintiff's serious medical needs during a June 16, 2025 encounter. Plaintiff further alleges violations of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Texas Tort Claims Act, based on Defendants' refusal to accommodate her known cardiac condition, their failure to protect her privacy and bodily integrity, and their use of restraint practices that caused the dislodgment and contamination of her implanted medical device.*

Plaintiff, ERIKA RASCON, by and through her attorneys, LLG National Law Group, and by way of Complaint, brings this action for damages and other equitable relief against Defendants, ROCKWALL COUNTY, TEXAS, DEPUTY JEFFREY WALLS, in his individual capacity, CITY OF WYLIE; JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities; and JOHN/JANE DOE WYLIE POLICE OFFICERS 1–5 in their individual capacities, alleging as follows:

**INTRODUCTION**

1.      This civil action arises from the unlawful detention, excessive force, disability-based discrimination, and deliberate indifference to the serious medical needs of Plaintiff Erika Rascon, who was seized, restrained, and denied medical accommodation by deputies of the Rockwall County Sheriff's Office on June 16, 2025. Despite Plaintiff's repeated warnings that she suffered from a life-threatening cardiac condition requiring continuous infusion therapy through a surgically implanted pump and central port line, deputies handcuffed her behind her back, ignored visible signs of medical distress, and refused to provide timely medical evaluation or oxygen.

2.      Deputies maintained Plaintiff in restraints for an extended period, approximately three hours, according to witness statements, while disregarding her explicit pleas for accommodation and the warnings issued by civilian witness Micah Ray, who informed deputies of Plaintiff's medical device and the risks associated with improper restraint. The deputies' conduct caused displacement and contamination of Plaintiff's port line, triggering infusion-system alerts, resulting in a documented port-line infection, and requiring hospitalization, intravenous antibiotics, and disruption of her cardiac therapy regimen. The Sheriff's Office later classified the incident as "informational" and took no corrective action, despite Plaintiff's formal complaint and the medical consequences that followed.

3.      Defendants' actions violated Plaintiff's rights under the Fourth Amendment (unlawful seizure and excessive force), the Fourteenth Amendment (deliberate indifference to serious medical needs), Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Texas law, including the Texas Tort Claims Act's waiver for negligent use of tangible personal property. Plaintiff seeks compensatory damages, punitive damages where permitted, attorney's fees under 42 U.S.C. § 1988, and all other relief available under federal and

2

state law.

## JURISDICTION AND VENUE

4.  This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts federal questions arising under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act. Jurisdiction is further proper under 28 U.S.C. § 1343(a)(3)–(4) because Plaintiff seeks redress for the deprivation of rights secured by the Constitution and laws of the United States, including the Fourth and Fourteenth Amendments.

5.  This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

6.  Venue is proper in the Eastern District of Texas, Sherman Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims, including her detention, restraint, and resulting injuries, occurred in Rockwall County, Texas, which lies within this District and Division.

7.  Venue is proper in the Eastern District of Texas, Sherman Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Rockwall County, Texas, which lies within this District and Division.

## PARTIES

8.  At all times relevant hereto, Plaintiff ERIKA RASCON was and is an adult resident of Plano, Texas. Plaintiff suffers from a documented cardiac condition requiring continuous infusion therapy through a surgically implanted pump and central port line, a disability known to Defendants at the time of the events described herein.

9.  At all times relevant hereto, Defendant ROCKWALL COUNTY was and is a political subdivision of the State of Texas and may be served through its County Judge at 101 West

Rusk Street, Rockwall, Texas 75087. Rockwall County is a proper defendant for Plaintiff's ADA Title II, Rehabilitation Act § 504, Monell, and Texas Tort Claims Act claims, as its deputies and employees acted within the scope of their employment during the events giving rise to this action.

10.     At all times relevant hereto, Defendant CITY OF WYLIE is a municipal entity organized under the laws of the State of Texas and may be served through its City Manager at 300 Country Club Road, Building 100, Wylie, Texas 75098. The City of Wylie is a proper defendant for Plaintiff's Monell claims under 42 U.S.C. § 1983 because its police officers acted pursuant to municipal policies, customs, or practices when they failed to intervene, failed to provide medical assistance, and failed to protect Plaintiff's privacy and bodily integrity.

11.     At all times relevant hereto, Defendant Deputy JEFFREY WALLS was a deputy sheriff employed by the Rockwall County Sheriff's Office, acting under color of state law and performing law-enforcement functions within Rockwall County. He is sued in his individual capacity for violations of federal law. His employment address for service of process is believed to be 3110 Troy Road, Wylie, Texas 75098, the location where he detained and restrained Plaintiff.

12.     At all times relevant hereto, Defendants JOHN/JANE DOE DEPUTIES 1–5 were deputy sheriffs employed by the Rockwall County Sheriff's Office who were present during Plaintiff's detention, participated in the unlawful seizure and excessive force, or failed to intervene despite having the opportunity and duty to do so. They are sued in their individual capacities for violations of federal law.

13.     At all times relevant hereto, Defendants JOHN/JANE DOE WYLIE POLICE OFFICERS 1–5 were police officers employed by the Wylie Police Department who were present during Plaintiff's detention, observed her visible medical distress, the device alerts, and the manner in which Rockwall County deputies restrained her, and failed to intervene despite having the opportunity and duty to do so. They are sued in their individual capacities for violations of federal

4

law.

14.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiff. Plaintiff will seek leave from the court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

## FACTUAL BACKGROUND

17.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

18.     On June 16, 2025, Plaintiff Erika Rascon was detained by Deputy Jeffrey Walls and additional deputies of the Rockwall County Sheriff's Office at or near 3110 Troy Road, Wylie, Texas, a property where Plaintiff was present with her companion, Micah Ray.

19.     Deputies arrived on scene at approximately 1:20 p.m., placed Plaintiff in restraints shortly thereafter, and did not release her until approximately 4:00 p.m. EMS was not summoned until after Plaintiff had been restrained for a substantial period of time, despite her repeated requests for medical assistance and visible signs of distress. This extended duration far exceeded the scope of any lawful investigative detention.

20.     Plaintiff suffers from a serious cardiac condition requiring continuous infusion therapy delivered through a surgically implanted pump and central port line affixed to her hip. This condition is documented in her medical records and was known to deputies at the time of the incident.

21.     Plaintiff repeatedly informed deputies of her medical condition, explained the presence and function of the infusion pump and port line, and warned that rear handcuffing would disrupt the device, trigger system alerts, and place her at risk of infection, cardiac instability, and interruption of life-sustaining therapy. Civilian witness Micah Ray also warned deputies of

Plaintiff's medical vulnerability.

22.    Despite these explicit warnings, deputies placed Plaintiff in rear handcuffs, exerting pressure on the infusion pump and causing the device to issue alerts. Plaintiff's sworn complaint and the Sheriff's Office documents reflect that deputies handled her roughly, ignored her pleas, and failed to adjust the restraints until after the device had already been compromised.

23.    Deputies observed the infusion device's audible and visual alerts, heard Plaintiff explain that the alarms indicated a disruption in medication flow, and were repeatedly informed by both Plaintiff and witness Micah Ray that the pressure from the restraints was compromising the port line. Despite this actual knowledge, deputies refused to adjust the restraints or seek immediate medical evaluation.

24.    Officers from the Wylie Police Department were present during Plaintiff's detention and observed her visible medical distress, the infusion-device alerts, and the manner in which Rockwall County deputies restrained her. Despite having the ability and opportunity to intervene to prevent further harm, Wylie PD officers took no action to assist Plaintiff, adjust the restraints, or secure timely medical care.

25.    Safer and readily available alternatives existed that would have avoided harm to Plaintiff, including front-cuffing, using a single-wrist escort hold, temporarily removing restraints while verifying identification, or allowing Plaintiff to sit rather than remain standing in the sun. Deputies refused to consider or implement any of these reasonable alternatives, despite Plaintiff's repeated explanations that rear-handcuffing placed dangerous pressure on her implanted medical device and despite the absence of any threat, resistance, or safety concern that would have justified the use of a more dangerous restraint method.

26.    Plaintiff remained restrained for approximately three hours without access to oxygen, medical evaluation, or timely transport, despite visible signs of distress, repeated requests

for accommodation, and the escalating risk to her cardiac condition. Deputies left her in the sun for part of this period and failed to summon EMS until after significant deterioration.

27.   During the detention, Plaintiff experienced escalating symptoms including dizziness, chest discomfort, shortness of breath, and pain at the port-line site. The infusion pump's alerts indicated that medication delivery had been interrupted, creating an immediate risk of cardiac instability. Deputies disregarded these symptoms and continued to maintain Plaintiff in restraints.

28.   During the incident, Plaintiff was partially undressed from the waist up while deputies inspected her medical dressing. Plaintiff was in visible distress and repeatedly requested assistance, yet multiple officers, including Wylie PD officers, stood by without intervening. No female officer was present, and no steps were taken to protect Plaintiff's privacy or dignity, despite the absence of any safety or investigative need for such exposure.

29.   Deputies refused to provide medical assistance, failed to summon EMS in a timely manner, and ignored Plaintiff's escalating symptoms. The Sheriff's Office incident report later classified the event as merely "Informational – No Offense," despite Plaintiff's documented medical crisis.

30.   Plaintiff was detained at a location approximately half an acre from the property entrance, where no patrol vehicles or emergency personnel were positioned. This placement created a significant delay in accessing medical assistance once Plaintiff's condition deteriorated, further contributing to the risk of harm.

31.   Emergency medical personnel did not enter the property or reach Plaintiff's location promptly, further delaying assessment and treatment. Despite Plaintiff's continued visible distress and repeated requests for help, she did not receive necessary medical care, including oxygen, until significantly later, exacerbating her symptoms and contributing to

subsequent medical complications.

32.     As a direct result of Defendants' conduct, Plaintiff's port line became dislodged and contaminated, causing a port-line infection that required hospitalization, intravenous antibiotics, and interruption of her cardiac infusion therapy. Plaintiff's medical providers documented the infection and the disruption of her treatment regimen.

33.     The dislodgment and contamination of Plaintiff's port line occurred during the period she was rear-handcuffed and physically restrained, when the infusion pump's alerts indicated a disruption in medication flow. Medical providers later confirmed that the infection and interruption of therapy were consistent with mechanical displacement and contamination caused by external pressure on the device. The injuries Plaintiff sustained were therefore the direct and foreseeable result of the manner in which deputies restrained her.

34.     From the time of her detention through the conclusion of the incident, Plaintiff remained in visible distress and repeatedly requested medical assistance. Officers failed to take reasonable steps to provide or secure adequate medical care, despite knowing of her cardiac condition, the device alerts, and her escalating symptoms.

35.     Plaintiff experienced severe emotional distress, fear, anxiety, and physical pain during and after the detention. The Sheriff's Office later acknowledged receiving her complaint but concluded, contrary to the medical evidence, that no policy violations occurred.

36.     At no time did deputies identify Plaintiff as a suspect in any crime, articulate any specific, articulable facts suggesting she had committed or was committing an offense, or indicate that she posed any threat to officer safety. Plaintiff was not accused of trespassing, had not been reported to law enforcement, and was not the subject of any complaint. The prolonged detention, therefore, lacked any legitimate investigatory purpose and exceeded the permissible scope of a temporary investigative stop.

37.     Although Plaintiff was told at one point that she could be released and that no charges were being pursued, she was not actually free to leave. Deputies continued to restrict her movement, maintain control over her, and prevent her departure, thereby prolonging the unlawful seizure.

38.     No exigent circumstances justified Plaintiff's detention or the continued use of restraints. Plaintiff was unarmed, compliant, non-threatening, and exhibited no behavior suggesting danger to deputies, bystanders, or herself. Deputies did not report any disturbance, emergency, or safety concern requiring immediate action, and no facts existed that would have prevented deputies from releasing Plaintiff, adjusting the restraints, or providing medical assistance. The absence of any safety-based justification further underscores that the prolonged detention and restraint were objectively unreasonable.

39.     The conduct of the deputies was consistent with Rockwall County's failure to train personnel on the safe handling of detainees with implanted medical devices or serious medical conditions. The County's subsequent classification of the incident as merely "Informational – No Offense," despite Plaintiff's documented medical injuries, reflects a systemic failure to recognize, document, or correct unconstitutional and unsafe restraint practices.

40.     At all times relevant, the constitutional rights at issue were clearly established. It has long been clearly established that: (1) detaining an individual without reasonable suspicion or probable cause violates the Fourth Amendment; (2) using force that is objectively unreasonable in light of a known medical vulnerability violates the Fourth Amendment; and (3) ignoring a detainee's serious medical needs, particularly after explicit warnings and visible signs of distress, violates the Fourteenth Amendment. A reasonable officer would have understood that rear-handcuffing a medically fragile individual after explicit warnings, maintaining her in restraints despite escalating symptoms, and delaying medical care constituted unlawful conduct.

41.     Plaintiff submitted timely written notice under the Texas Tort Claims Act on April 18, 2026, identifying the date, location, injuries, and circumstances of the incident, thereby satisfying all statutory prerequisites to suit.

**COUNT I**
**FOURTH AMENDMENT UNLAWFUL SEIZURE (42 U.S.C. § 1983)**
*(Against Deputy Walls and Doe Defendants in their Individual Capacities)*

42.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

43.     On June 16, 2025, Defendants seized Plaintiff within the meaning of the Fourth Amendment by detaining her at 3110 Troy Road, restricting her freedom of movement, placing her in handcuffs, and preventing her from leaving for approximately three hours.

44.     Defendants lacked probable cause, reasonable suspicion, or any lawful justification to detain Plaintiff. At no point did Defendants articulate a crime, identify a legal basis for the detention, or provide Plaintiff with any explanation for the seizure.

45.     Although Defendants told Plaintiff she could be released and that no charges were being pursued, she was not actually free to leave. Defendants continued to restrict her movement and prevent her departure, thereby prolonging the unlawful seizure in violation of the Fourth Amendment.

46.     A reasonable officer would have known that detaining an individual for an extended period without probable cause or reasonable suspicion violates clearly established Fourth Amendment law, including the well-settled principle that an investigatory detention must be supported by specific, articulable facts and must be temporary and narrowly tailored to its purpose.

47.     Defendants' unlawful seizure was a direct and proximate cause of Plaintiff's injuries, including the displacement and contamination of her medical port line, the resulting infection and hospitalization, the disruption of her cardiac infusion therapy, and the emotional

10

distress, fear, and physical pain she experienced during and after the detention.

## COUNT II
## FOURTH AMENDMENT EXCESSIVE FORCE (42 U.S.C. § 1983)
### *(Against Deputy Walls and Doe Defendants in their Individual Capacities)*

48.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

49.     Defendants used objectively unreasonable force when they handcuffed Plaintiff behind her back despite her repeated warnings that she had a surgically implanted infusion pump and central port line, that rear-cuffing would place dangerous pressure on the device, and that such pressure could cause displacement, contamination, and interruption of life-sustaining cardiac therapy.

50.     Rear-handcuffing a medically vulnerable individual with a known implanted medical device, after explicit warnings from both Plaintiff and civilian witness Micah Ray, constitutes excessive force under clearly established Fourth Amendment law. No reasonable officer could believe that such force was necessary or lawful under the circumstances.

51.     The objective unreasonableness of the force used against Plaintiff was further demonstrated by the presence of multiple Wylie PD officers who observed her visible medical distress, her partial exposure during a medical-device inspection, and the ongoing pressure placed on her implanted device, yet took no action to intervene or mitigate the harm.

52.     The force used by Defendants was excessive, unnecessary, and disproportionate to any legitimate law-enforcement need. Defendants' actions directly caused the dislodgment and contamination of Plaintiff's port line, triggering infusion-system alerts, resulting in a documented port-line infection, and requiring hospitalization, intravenous antibiotics, and disruption of her cardiac therapy regimen.

53.     As a direct and proximate result of Defendants' excessive force, Plaintiff suffered

physical injury, pain, emotional distress, fear, anxiety, and ongoing medical complications.

**COUNT III**
**FOURTEENTH AMENDMENT DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS (42 U.S.C. § 1983)**
*(Against All Individual Defendants in Their Individual Capacities)*

54. Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

55. Plaintiff's cardiac condition, requiring continuous infusion therapy through a surgically implanted pump and central port line, constituted a serious medical need that was obvious, life-threatening if disrupted, and repeatedly communicated to Defendants. Plaintiff expressly warned deputies that rear-handcuffing would place dangerous pressure on the device, risk contamination, and interrupt life-sustaining therapy. Civilian witness Micah Ray also alerted deputies to Plaintiff's medical vulnerability.

56. Defendants had actual knowledge of Plaintiff's serious medical need yet consciously disregarded that risk by:

 a. placing her in rear handcuffs despite explicit warnings;

 b. maintaining her in restraints for approximately three hours;

 c. ignoring visible signs of medical distress;

 d. refusing to provide oxygen or medical evaluation;

 e. delaying the summoning of EMS; and

 f. leaving her in the sun and failing to adjust the restraints until after the device had already been compromised.

57. This conduct satisfies the Fourteenth Amendment's deliberate-indifference standard because Defendants were aware of facts indicating a substantial risk of serious harm and chose to disregard that risk.

58.     Wylie PD officers were present during Plaintiff's medical distress, observed the infusion-device alerts, witnessed Plaintiff's escalating symptoms, and heard her repeated requests for assistance, yet took no action to provide or secure medical care. Their failure to intervene or summon timely medical assistance, despite actual knowledge of Plaintiff's serious medical need, constitutes deliberate indifference under the Fourteenth Amendment.

59.     Defendants' deliberate indifference directly caused the dislodgment and contamination of Plaintiff's port line, resulting in a documented port-line infection, hospitalization, intravenous antibiotics, and interruption of her cardiac infusion therapy. Plaintiff also suffered physical pain, emotional distress, fear, and ongoing medical complications as a result of Defendants' unconstitutional conduct.

60.     Defendants further acted with deliberate indifference by failing to protect Plaintiff's privacy and bodily integrity while she was partially undressed for a medical-device inspection, failing to summon a female officer, and failing to shield her from view. Defendants also contributed to delays in medical care by detaining Plaintiff at a location far from the property entrance, where EMS personnel could not promptly reach her, thereby exacerbating her medical condition.

61.     Defendants' refusal to modify standard restraint practices despite actual knowledge of Plaintiff's disability, repeated warnings of the danger, and visible signs of medical distress constitutes intentional discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act. Defendants were aware of a substantial likelihood that their actions would violate Plaintiff's federally protected rights and consciously disregarded that risk.

62.     Rockwall County's failure to train deputies on the safe restraint of individuals with implanted medical devices, the handling of detainees with known medical vulnerabilities, and the obligation to provide reasonable modifications under the ADA and §504 reflects a policy, custom,

or practice of deliberate indifference to the rights of disabled individuals. The County's subsequent classification of the incident as merely "Informational – No Offense," despite Plaintiff's documented medical injuries, further demonstrates the absence of adequate training, supervision, and corrective action.

**COUNT IV**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT**
*(Against Rockwall County)*

63.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

64.    Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2). Plaintiff suffers from a serious cardiac condition requiring continuous infusion therapy through a surgically implanted pump and central port line, an impairment that substantially limits major life activities, including cardiovascular function, mobility, and self-care.

65.    Defendant Rockwall County is a public entity subject to Title II of the ADA. Its deputies, including Deputy Walls and Doe Defendants, were acting within the scope of their employment and performing law-enforcement functions on behalf of the County during the events described herein.

66.    Rockwall County, through its deputies, denied Plaintiff the benefits of law-enforcement services and failed to provide reasonable modifications necessary to avoid discrimination on the basis of disability. These failures included, but were not limited to:

    a.  refusing to modify standard restraint practices despite explicit warnings about Plaintiff's medical device;

    b.  rear-handcuffing Plaintiff in a manner that placed dangerous pressure on her infusion pump and port line;

    c.  failing to provide timely medical evaluation, oxygen, or EMS transport;

14

d.  ignoring visible signs of medical distress; and

e.  maintaining Plaintiff in restraints for an extended period despite knowledge of her disability-related risks.

67.   Rockwall County's refusal to modify its policies, practices, and procedures, despite actual knowledge of Plaintiff's disability and the substantial risk of harm, constitutes discrimination under 42 U.S.C. § 12132. These failures were a direct and proximate cause of Plaintiff's injuries, including the dislodgment and contamination of her port line, the resulting infection and hospitalization, and the disruption of her cardiac therapy.

## COUNT V
## SECTION 504 OF THE REHABILITATION ACT
### *(Against Defendant Rockwall County)*

68.   Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

69.   Defendant Rockwall County is a recipient of federal financial assistance within the meaning of Section 504 of the Rehabilitation Act, including federal funds used to support law-enforcement operations, emergency response services, and county-level public-safety programs.

70.   Plaintiff is an individual with a disability, and her cardiac condition, requiring continuous infusion therapy through a surgically implanted pump and central port line, substantially limits major life activities. Rockwall County discriminated against Plaintiff solely because of her disability by refusing to accommodate her known medical condition, by applying standard restraint practices despite explicit warnings of the danger, and by failing to provide timely medical evaluation, oxygen, or EMS transport.

71.   Rockwall County's failure to modify its policies, practices, and procedures, despite actual knowledge of Plaintiff's disability and the substantial risk of harm, constitutes a violation

15

of 29 U.S.C. § 794(a). This discrimination was a direct and proximate cause of Plaintiff's physical injuries, including the dislodgment and contamination of her port line, the resulting infection and hospitalization, the interruption of her cardiac therapy, and the emotional distress and pain she suffered.

72.     At all times relevant, Deputy Walls and the Doe Defendants were acting within the course and scope of their employment with the Rockwall County Sheriff's Office, performing law-enforcement duties on behalf of Rockwall County. Their negligent use of handcuffs and restraint equipment is therefore attributable to the County under the Texas Tort Claims Act.

**COUNT VI**
**<u>NEGLIGENCE UNDER THE TEXAS TORT CLAIMS ACT</u>**
*(Against Defendant Rockwall County)*

73.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

74.     Plaintiff's injuries were caused by the negligent use and misuse of tangible personal property, including handcuffs, restraint equipment, and other physical tools used by deputies during her detention, within the meaning of Tex. Civ. Prac. & Rem. Code § 101.021(2). Deputies' negligent handling and application of these items created a foreseeable and unreasonable risk of harm to Plaintiff's implanted medical device.

75.     Deputies acting within the scope of their employment used handcuffs in a manner that foreseeably caused physical injury to Plaintiff's infusion pump and central port line. Despite explicit warnings that rear-handcuffing would place dangerous pressure on the device, deputies applied and maintained the restraints in a way that caused the port line to become dislodged, contaminated, and infected, resulting in hospitalization and interruption of life-sustaining cardiac therapy.

76.     Rockwall County's governmental immunity is waived under the Texas Tort Claims

Act because Plaintiff's injuries were proximately caused by the negligent use of tangible personal property by County employees acting within the scope of their employment. Tex. Civ. Prac. & Rem. Code § 101.021(2).

77.    As a direct and proximate result of this negligence, Plaintiff suffered physical injury, pain, emotional distress, medical expenses, hospitalization, and disruption of her cardiac infusion therapy, as well as ongoing medical complications related to the port-line infection.

**COUNT VII**
**MONELL LIABILITY UNDER 42 U.S.C. § 1983**
*(Against Rockwall County)*

78.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

79.    Rockwall County, through the Rockwall County Sheriff's Office, maintained policies, customs, or practices that were the moving force behind the constitutional violations suffered by Plaintiff, including unlawful seizure, excessive force, and deliberate indifference to serious medical needs.

80.    Rockwall County failed to train and supervise its deputies on: (a) the safe restraint of individuals with implanted medical devices; (b) the handling of detainees with known medical vulnerabilities; (c) the obligation to provide timely medical care to detainees exhibiting distress; and (d) the requirement to provide reasonable modifications under the ADA and Section 504. This failure to train reflects deliberate indifference to the rights of individuals with disabilities and medical conditions.

81.    Rockwall County's deliberate indifference is further demonstrated by its classification of the incident as merely "Informational – No Offense," despite Plaintiff's documented medical crisis, device alerts, visible distress, and subsequent hospitalization. The County's failure to investigate, discipline, or correct the deputies' conduct reflects an official

17

policy or custom of disregarding constitutional violations and medical-care obligations.

82.    Rockwall County's policies, customs, and failures to train were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights. Deputies acted in accordance with these policies and customs when they detained Plaintiff without legal justification, used objectively unreasonable force despite explicit medical warnings, ignored escalating symptoms, delayed medical care, and failed to provide reasonable accommodations.

83.    As a direct and proximate result of Rockwall County's unconstitutional policies, customs, and failures to train, Plaintiff suffered physical injury, emotional distress, medical complications, and the disruption of life-sustaining cardiac therapy.

## COUNT VIII
## FAILURE TO INTERVENE (42 U.S.C. § 1983)
### (Against Deputy Walls, Rockwall County Doe Deputies, and Wylie PD Doe Officers 1–5)

84.    Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

85.    Defendants Walls, Rockwall County Doe Deputies, and Wylie PD Doe Officers were present during Plaintiff's detention and personally observed the circumstances giving rise to the constitutional violations, including:

    a.  Plaintiff's visible medical distress;

    b.  the audible and visual alerts from her infusion device;

    c.  the manner in which she was rear-handcuffed despite explicit medical warnings;

    d.  her partial exposure during a dressing check; and

    e.  the delay in summoning EMS and providing medical assistance.

86.    These Defendants had actual knowledge that Plaintiff faced a substantial and escalating risk of serious harm, including the risk of contamination, displacement, and interruption

18

of her implanted medical device, the risk of cardiac instability, and the risk of continued unlawful detention without legal justification.

87.     Despite having a reasonable opportunity to intervene to prevent or mitigate the unlawful seizure, excessive force, privacy violations, and deliberate indifference to Plaintiff's serious medical needs, these Defendants failed to take any action. They did not adjust the restraints, summon timely medical care, protect Plaintiff's privacy, or otherwise intervene to stop the ongoing constitutional violations.

88.     A reasonable officer in the same circumstances would have understood that failing to intervene in the face of obvious constitutional violations violates clearly established Fourth and Fourteenth Amendment rights. The duty to intervene to prevent excessive force, unlawful detention, and deliberate indifference has long been clearly established in this Circuit. See *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995); *Darden v. City of Fort Worth*, 880 F.3d 722, 742–43 (5th Cir. 2018); *Hamilton v. Kindred*, 845 F.3d 659, 663–64 (5th Cir. 2017).

89.     Defendants' failure to intervene was a direct and proximate cause of Plaintiff's injuries, including the dislodgment and contamination of her port line, the resulting infection and hospitalization, the interruption of her cardiac infusion therapy, the emotional distress and humiliation caused by her exposure and untreated medical distress, and the ongoing medical complications she continues to suffer.

## COUNT IX
## MONELL LIABILITY UNDER 42 U.S.C. § 1983
### *(Against City of Wylie)*

90.     Plaintiff hereby repeats all of the allegations contained in the Complaint thus far above and incorporates the same as if fully set forth at length herein.

91.     The City of Wylie, through the Wylie Police Department, maintained policies,

customs, or practices that were the moving force behind the constitutional violations suffered by Plaintiff, including:

a. failure to intervene in the face of obvious constitutional violations;

b. failure to provide or secure timely medical assistance; and

c. failure to protect Plaintiff's privacy, bodily integrity, and dignity during a medical-vulnerability event.

92. The City of Wylie failed to adequately train, supervise, and discipline its officers on:

a. their duty to intervene when witnessing unlawful seizure, excessive force, or deliberate indifference;

b. responding appropriately to detainees with known or obvious medical vulnerabilities;

c. protecting the privacy and bodily integrity of detainees, including during medical checks or partial disrobing; and

d. ensuring timely access to medical care, including directing EMS to the detainee's actual location and providing basic medical assistance while awaiting EMS.

93. These failures to train and supervise were so inadequate and so likely to result in constitutional violations that they reflect the City's deliberate indifference to the rights of individuals with medical vulnerabilities. The City had actual or constructive knowledge that its officers routinely failed to intervene, failed to provide medical assistance, and failed to protect detainee privacy, yet took no steps to correct these deficiencies.

94. The City's deliberate indifference is further demonstrated by its officers' conduct during the incident at issue, including standing by while Plaintiff was visibly distressed, partially

undressed, and in need of medical assistance; failing to intervene despite having the opportunity and duty to do so; and failing to ensure that EMS personnel reached Plaintiff promptly. These actions were consistent with the City's policies, customs, or practices and were not isolated or aberrational.

95.     The City's policies, customs, and failures to train were the moving force behind the violations of Plaintiff's Fourth and Fourteenth Amendment rights. Wylie PD officers acted in accordance with these policies and customs when they failed to intervene, failed to protect Plaintiff's privacy, and failed to secure timely medical care despite actual knowledge of her medical vulnerability and escalating distress.

96.     As a direct and proximate result of the City of Wylie's unconstitutional policies, customs, and failures to train, Plaintiff suffered physical injury, emotional distress, humiliation, medical complications, and the disruption of life-sustaining cardiac therapy.

## DAMAGES

97.     As a direct and proximate result of the conduct of all Defendants, Plaintiff suffered significant physical injuries, including the dislodgment and contamination of her implanted port line, a resulting port-line infection, hospitalization, intravenous antibiotic treatment, and interruption of her cardiac infusion therapy. Plaintiff continues to experience pain, fatigue, loss of mobility, and ongoing medical complications related to the disruption of her cardiac treatment.

98.     Plaintiff also suffered substantial emotional and psychological harm, including fear, anxiety, humiliation, and trauma associated with being restrained while medically vulnerable, ignored despite repeated pleas for help, and denied timely medical care. These injuries were compounded by the presence of multiple officers who stood by without intervening, despite observing her visible distress and hearing her requests for assistance.

99.     Plaintiff suffered additional emotional distress and loss of dignity when she was

partially undressed from the waist up during a medical-device inspection, without any effort by officers to protect her privacy, shield her from view, or summon a female officer. This unnecessary exposure caused humiliation, embarrassment, and lasting psychological harm.

100. Plaintiff further suffered constitutional injuries, including the violation of her rights to be free from unlawful seizure, excessive force, deliberate indifference to serious medical needs, privacy and bodily integrity, and the right to have officers intervene to prevent ongoing constitutional violations. These constitutional injuries are themselves compensable under 42 U.S.C. § 1983.

101. Plaintiff incurred and continues to incur medical expenses, including emergency treatment, hospitalization, follow-up care, medication, and costs associated with repairing and re-stabilizing her infusion system. Plaintiff will require ongoing medical monitoring and treatment due to the disruption of her cardiac therapy.

102. Plaintiff's damages exceed $550,000, and the full extent of her prognosis, long-term medical needs, and future treatment costs remains under evaluation as her condition continues to evolve.

103. Plaintiff seeks punitive damages against all individual Defendants, including Deputy Walls, Rockwall County Doe Deputies, and Wylie PD Doe Officers, because their conduct was malicious, reckless, and in conscious disregard of Plaintiff's federally protected rights.

104. Plaintiff seeks compensatory damages, special damages, general damages, and all other damages available under federal and state law, including damages recoverable under 42 U.S.C. § 1983, Title II of the ADA, Section 504 of the Rehabilitation Act, and the Texas Tort Claims Act.

## PRAYER FOR RELIEF

105. **WHEREFORE,** for the foregoing reasons and pursuant to the Counts above,

22

Plaintiff, ERIKA RASCON, demands judgment against Defendants ROCKWALL COUNTY, TEXAS, DEPUTY JEFFREY WALLS, in his individual capacity, CITY OF WYLIE; JOHN/JANE DOE DEPUTIES 1–5, in their individual capacities; and JOHN/JANE DOE WYLIE POLICE OFFICERS 1–5 in their individual capacities, as pleaded, for general, compensatory, and punitive damages where permitted by law, reasonable attorney's fees and costs of suit with interest pursuant to 42 U.S.C. §1988, and any further relief which the Court may deem equitable and just.

## JURY DEMAND

106.    Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

## CERTIFICATION

107.    Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Dated: May 29, 2026

Respectfully Submitted,

 _/s/ Renee Walker_____
Renee Walker, ESQUIRE
Texas State Bar No.: 16958480
**LLG NATIONAL LAW GROUP**
3003 N Central Avenue - Suite 685
Phoenix, AZ 85012
Phone: 602.960.9400
Fax: 707.215.3600
Renee.walker@llgnational.com
*Attorney for Plaintiff*

23