**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ERIKA RASCON,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **ROCKWALL COUNTY, TEXAS; DEPUTY JEFFREY WALLS, in his individual capacity; CITY OF WYLIE; JOHN/JANE DOE DEPUTIES 1-5, in their individual capacities; and JOHN/JANE DOE WYLIE POLICE OFFICERS 1-5, in their individual capacities,** | § § § § § § § | **No. 4:26-CV-00573-ALM** |
| | § | |
| **Defendants.** | § | |

**DEFENDANTS ROCKWALL COUNTY, DEPUTY JEFFREY WALLS, AND DEPUTY TREY WILLIAMS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED; AND DEFENDANT ROCKWALL COUNTY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AS TO PLAINTIFF'S NEGLIGENCE CLAIM**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Defendants Rockwall County, Texas (the "County"), Deputy Jeffrey Walls ("Deputy Walls"), and Deputy Trey Williams ("Deputy Walls") (the County, Deputy Walls, and Deputy Williams referred to collectively as "Defendants") and, pursuant to Rule 12(b)(6), file their Motion for Dismissal for Failure to State Claims Upon Which Relief Can Be Granted. The County also files, pursuant to Rule 12(b)(1), its Motion to Dismiss for Lack of Subject Matter Jurisdiction as to Plaintiff's Negligence Claim. In support thereof, Defendants respectfully show the Court as follows:

# I.
# INTRODUCTION

Plaintiff has sued Defendants under 42 U.S.C. Section 1983 for violations of her 4th Amendment right to be free from unlawful seizure and excessive force; and under the 14th Amendment for failing to address a serious medical need. *See* Dkt. 18, pp. 12-16, ¶¶42-62; and pp. 20-21, ¶¶78-83. Plaintiff has also sued Deputy Walls and Deputy Williams for Failing to Intervene to prevent a Constitutional violation. *Id*., at pp. 21-22, ¶¶84-89. Plaintiff has also sued Rockwall County for disability discrimination under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"). *Id*., at pp. 17-19, ¶¶63-72. Finally, Plaintiff asserts State-law negligence claims against the County under the Texas Tort Claims Act. *Id*., at pp.19-20, ¶¶73-77.

All of Plaintiff's claims against the County under 42 U.S.C. Section 1983, the ADA, and Section 504 should be dismissed for failing to state claims upon which relief can be granted. Moreover, the County is immune from suit and liability from Plaintiff's negligence claim. As a result, this Court lacks subject matter jurisdiction and Plaintiff's negligence claim should be dismissed.

Additionally, all of Plaintiff's claims against Deputy Walls and Deputy Williams should be dismissed for failure state claims upon which relief can be granted. Moreover, Deputy Walls and Deputy Williams are entitled to qualified immunity from all Plaintiff's claims against them because there are no well pled allegations of a Constitutional violation, much less of a violation of clearly established rights.

# II.
# STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The following issues are presented to the Court for decision:

1. Should Plaintiff's negligence claims against the County be dismissed because it is immune from such claims?

2. Should Plaintiff's Section 1983 claims against the County be dismissed for failing to state claims for which relief may be granted?

3. Should Plaintiff's ADA and Section 504 claims against the County be dismissed for failing to state claims for which relief may be granted?

4. Should Plaintiff's Section 1983 claims against Deputy Walls and Deputy Williams be dismissed for failing to state claims for which relief may be granted?

5. Should Plaintiff's failure to intervene claims against Deputy Walls and Deputy Williams be dismissed?

6. Should all of Plaintiff's claims against Deputy Walls and Deputy Williams be dismissed for failure to state a claim upon which relief can be granted because they are entitled to qualified immunity?

## III.
## EVIDENCE

Defendants attach the following evidence in support of this motion:

1. Affidavit of Heather Mitchell and attached body cam videos (Exhibit A).

## IV.
## BRIEF

### A. MOTION TO DISMISS STANDARD UNDER RULE 12(B)(1) AND THE TEXAS TORT CLAIMS ACT.

#### 1. RULE 12(B)(1)

Rule 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case."[1] In deciding a Rule 12(b)(1) motion, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by

[1] *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015).

undisputed facts plus the court's resolution of disputed facts."[2] The party asserting jurisdiction bears the burden of proof for a motion under Rule 12(b)(1).[3]

### 2. THE TEXAS TORT CLAIMS ACT AND GOVERNMENTAL IMMUNITY

It is well established under the doctrine of governmental immunity that a governmental unit is not liable for the negligence or torts of its agents or employees, absent some constitutional or statutory waiver of that immunity.[4] Equally established is the rule that a cause of action may arise only when a waiver of governmental immunity is clear and explicit.[5] Absent such a waiver, a court does not have subject matter jurisdiction over a suit against a governmental body.[6]

"[W]hether a governmental unit is immune depends entirely upon statute."[7] The only potential waiver of immunity available to Plaintiff for her State-law claims against the County is that provided by the Texas Tort Claims Act, Texas Civil Practice & Remedies Code Sections 101.001, *et seq*.[8]

The Texas Tort Claims Act provides for a waiver of governmental immunity in causes of action which fall within the immunity waiver requirements found in the Act. The waiver of governmental immunity is a **limited** waiver, not a general one.[9] Section 101.021(1) of the Act waives immunity for claims involving the negligent use or operation of motor-driven vehicles or

---

[2] *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001).
[3] *Id.*
[4] *Dallas County MHMR v. Bossley*, 968 S.W.2d 339 at 341 (Tex. 1998); *Federal Sign v. Texas Southern University*, 951 S.W.2d 401 at 405 (Tex. 1997); *University of Texas Medical Branch at Galveston v. York*, 871 S.W.2d 175 at 177 (Tex. 1994); *Mt. Pleasant ISD v. Estate of Lindburg*, 766 S.W.2d 208 at 211 (Tex. 1989); *Texas Highway Department v. Weber*, 219 S.W.2d 70 (Tex. 1949).
[5] *Mt. Pleasant ISD*, 766 S.W.2d at 211.
[6] *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam); *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Fed. Sign*, 951 S.W.2d at 403; *Lamar Univ. v. Doe*, 971 S.W.2d 191, 194 (Tex. App. – Beaumont 1998, no pet.).
[7] *Bossley*, 968 S.W.2d at 341.
[8] *See Brown v. City of Houston*, 8 S.W.3d 331, 333-34 (Tex. App.—Waco 1999, pet. denied) (holding that the State and its political subdivisions enjoy full immunity from tort claims, except to the extent that their immunity is waived by the Texas Tort Claims Act).
[9] *Bossley*, 968 S.W.2d at 341; *Univ. of Texas Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

equipment by governmental employees, in circumstances where an employee would be personally liable under State-law.[10] Section 101.021(2) of the Act waives immunity for claims involving uses or conditions of tangible personal or real property, in circumstances where an employee would be personally liable under State-law.[11] Section 101.022 of the Act waives immunity for tort claims involving premises or special defects.[12]

Critically, the Act also contains several exceptions to its limited waiver of governmental immunity. One of these is found at Section 101.057, which exempts from the Act's waiver of immunity any claim "arising out of an assault, battery, false imprisonment or any other intentional tort."[13] This provision retains governmental immunity for any claim against a governmental unit based on the alleged intentional torts of its employees.[14]

### 3. THE COUNTY IS IMMUNE FROM PLAINTIFF'S NEGLIGENCE CLAIM AND THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THIS CLAIM.

Plaintiff has failed to plead a State-law claim against Rockwall County that falls within the limited waiver of governmental immunity provided by the Texas Tort Claims Act. While Count VI of Plaintiff's Complaint characterizes her State-law claim as involving the "negligent" use of handcuffs and restraint equipment (*see* Dkt. 18, pp. 10-20, ¶¶74 and 76), it is clear from Plaintiff's allegations of fact that the Deputies' handcuffing of Plaintiff was an intentional act, not a negligent one. *See* Dkt. 18, pp. 6-7, ¶¶19, 22, and 23. This conclusion is bolstered by the fact that the handcuffing of Plaintiff also serves as the basis for her Fourth Amendment excessive

---

[10] Texas Civil Practice & Remedies Code § 101.021(1); *LeLeaux v. Hamshire-Fannett ISD*, 835 S.W.2d 49 at 51 (Tex. 1992).
[11] *See* Texas Civil Practice & Remedies Code § 101.021(2); *Harris v. Galveston County*, 799 S.W.2d 766 at 768 (Tex. App.—Houston [14th Dist.] 1990, writ denied).
[12] *See* Texas Civil Practice & Remedies Code § 101.022.
[13] Texas Civil Practices & Remedies Code § 101.057(2).
[14] *Univ. of Tex. Medical Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Delaney v. Univ. of Houston*, 835 S.W.2d 56 (Tex. 1992).

force claim. *Id*., pp. 13-14, ¶¶49-53. The Fourth Amendment can only be violated by *intentional*, not negligent conduct.[15]

Thus, to the extent that Plaintiff alleges that Deputy Walls' actions in handcuffing her were wrongful, then Plaintiff is asserting a claim for an intentional tort, not a claim for negligence. As noted above, the Texas Tort Claims Act does not waive Rockwall County's governmental immunity for claims based on the intentional torts of its employees.[16] Plaintiff's State-law tort claims against Rockwall County under the Texas Tort Claims Act should, therefore, be dismissed for lack of subject matter jurisdiction.[17]

## B. MOTION TO DISMISS STANDARD UNDER RULE 12(B)(6)

### 1. RULE 12(B)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must plead sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.[18] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[19] Determining plausibility is a context-specific task and must be performed in light of a court's judicial experience and common sense.[20] A plaintiff's obligation in response to a motion to dismiss is to provide the grounds for his entitlement to relief which requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not suffice.[21] A

---

[15] *Bower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Kennedy v. City of Arlington*, 165 F.4th 937, 943 (5th Cir. 2026); *Gorman v. Sharp*, 892 F.3d 172, 173-75 (5th Cir. 2018).

[16] Texas Civil Practices & Remedies Code § 101.057(2); *Hohman*, 6 S.W.3d at 777; *Delaney*, 835 S.W.2d 56.

[17] Conversely, if the handcuffing of Plaintiff is characterized as a negligent act, rather than an intentional one, then Plaintiff has failed to state a viable Fourth Amendment excessive force claim, and that claim must be dismissed.

[18] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[19] *Iqbal*, 556 U.S. at 678.

[20] *Id*.

[21] *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").

plaintiff must allege sufficient facts to create more than a mere possibility that a defendant has acted unlawfully.[22] Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.[23] The Court should dismiss a complaint if it lacks an allegation regarding one of the required elements of a cause of action.[24]

A court should begin its analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth.[25] A court is not bound to accept legal conclusions couched as factual allegations.[26] The court need only accept as true the "well-pleaded" facts in a plaintiff's complaint.[27] To be "well pleaded," a complaint must state specific facts to support the claim, not merely conclusions couched as factual allegations.[28] In deciding a Rule 12(b)(6) motion, the court does not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement."[29]

Plaintiffs "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution;" pleading that "Defendants" committed

---

[22] *Iqbal*, 556 U.S. at 678.

[23] *Id.*; *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

[24] *See Keane v. Fox TV Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

[25] *Iqbal*, 556 U.S. at 679.

[26] *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[27] *Papasan*, 478 U.S. at 283; *Greene v. Greenwood Pub. Sch. Dist.*, 890 F.3d 240, 242 (5th Cir. 2018).

[28] *Iqbal*, 556 U.S. at 679; *Tuchman v. DSC Comm. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) (Plaintiff must plead "specific facts, not merely conclusory allegations."); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009).

[29] *Harmon v. City of Arlington*, 16 F.4th 1159, 1162-63 (5th Cir. 2021) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)) (emphasis added); *Gentilello*, 627 F.3d at 544.

misconduct does not meet the federal pleading standards.[30] The "complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a)."[31]

### 2. <u>THE COURT MAY CONSIDER BODY CAM VIDEOS IN DETERMINING THIS MOTION.</u>

As the Fifth Circuit held in *Kennedy v. City of Arlington*, 165 F.4th 937 (5th Cir. 2026):

> When evaluating a motion to dismiss, courts are usually confined to the complaint and its attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). But "[w]hen a defendant attaches documents to its motion that are referenced in the complaint and are central to the plaintiff's claims," then "the court can also properly consider those documents." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019). This principle applies equally to videos: When a plaintiff relies on and references video evidence "in their complaint and brief," Fifth Circuit "caselaw supports our consideration of the video." *Winder v. Gallardo*, 118 F.4th 638, 643 (5th Cir. 2024) (per curiam).

165 F.4th at 942. The Fifth Circuit has explained, '"In so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."' [32] Thus, the rule is the court can consider a video attached to a defendant's Rule 12(b)(6) motion to dismiss if: (1) the video is referenced in the complaint; and (2) it is central to a claim in plaintiff's complaint.[33]

---

[30] *Iqbal*, 556 U.S. at 676; *Armstrong v. Ashley*, 60 F.4th 262, 274-275 (5th Cir. 2023) (citing *Iqbal* and *Southland Sec. Corp. v. INSpire Ins. Solutions, inc.*, 365 F.3d 353, 365 (5th Cir. 2004)); *Setton Towing, L.L.C. v. Shelley*, No. 23-30578 (consolidated with No. 24-30044), 2024 U.S. App. LEXIS 18254, at *6-9 (5th Cir. 2024) (citations omitted); *Moore v. Fannie Mae*, No. MO:25-CV-00326-DC-RCG, 2026 U.S. Dist. LEXIS 6689, at *6-8 (W.D. Tex. Jan. 13, 2026) (pleading that "Defendants" acted improperly without identifying which defendant did what does not satisfy the federal pleading standards) (collecting cases), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 38312 (W.D. Tex. Feb. 24, 2026); *Cain v. City of New Orleans*, No. 15-4479 SECTION: R(2), 2016 U.S. Dist. LXIS 63527, at *15-17 (E.D. La. May 13, 2016) (same as *Moore*; collecting cases).

[31] *Brown v. Waybourn*, 764 F.Supp.3d 466, 470 (N.D. Tex. Jan. 27, 2025) (O'Connor, J.) (citing *Iqbal*, 556 U.S. at 676; *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020)).

[32] *Inclusive Cmtys. Project, Inc.*, 920 F.3d at 900 (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000)).

[33] *Rivera v. City of Pasadena*, 555 F.Supp.3d 443, 452 (S.D. Tex. Aug. 16, 2021) ("When defendants attach to a Rule 12(b)(6) motion to dismiss video evidence that is referred to in the complaint and central to it, a court may consider that evidence.").

Plaintiff expressly references the videos in her Amended Complaint. Plaintiff cites Walls' body camera footage at 15:03:15 and 15:31:15 in support of Plaintiff's allegations. *See* Doc. 18, at ¶25. Specifically, Plaintiff refers to the body camera footage as factual evidence that "Deputies refused to consider or implement any of these reasonable alternatives" and that Plaintiff was "not a risk of running" because she was "barely able to walk." Doc. 18, at ¶25. Accordingly, Plaintiff has expressly referenced the videos in her Amended Complaint.

Additionally, the video evidence is central to Plaintiff's claim that Defendants violated her constitutional and statutory rights. The body camera footage shows exactly what occurred during the incident that Plaintiff describes in her Amended Complaint. Plaintiff alleges that "deputies handled her roughly, ignored her pleas of chest pain and anxiety, and failed to adjust the restraints to back handcuffs until after the device had already been compromised." Doc. 18, p. 7, ¶22. Plaintiff alleges that she "remained restrained for approximately three hours without access to oxygen, medical evaluation, or timely transport, despite visible signs of distress, repeated requests for accommodation, and the escalating risk of her cardiac condition." *Id*., at p. 8, ¶26. Plaintiff alleges that "Deputies Walls, Williams and Mejia refused to provide medical assistance, failed to summon EMS in a timely manner, and ignored Plaintiff's escalating symptoms." *Id*., at p. 8, ¶29. Plaintiff alleges that Defendants "failed to take reasonable steps to provide or secure adequate medical care, despite knowing of her cardiac condition, the device alerts, and her escalating symptoms." *Id*., at p. 10 , ¶34. Plaintiff alleges that "while Williams commented to Mejia 'cuff still on' outside of Walls' hearing, neither said anything to Walls until Micah pled for removal of cuffs." *Id*., at p. 13, ¶46 (Count I). Plaintiff alleges that "Rockwall Deputies Williams and Mejia who observed her visible medical distress, her partial exposure during a medical-device inspection, and the ongoing pressure placed on her implanted device,

yet took no action to intervene or mitigate the harm until forced to rebandage inside the building." *Id*., a p. 14, ¶51 (Count II). Plaintiff further alleges that her cardiac condition was "repeatedly communicated to Defendants Walls, Williams and Meija" and that she "expressly warned Deputy Walls that rear-handcuffing would place dangerous pressure on the device, risk contamination, and interrupt life-sustaining therapy." *Id*., at pp. 14-15, ¶55 (Count III). Plaintiff also incorporates these allegations into her other claims. *See* Doc. 18, at pp. 16-23, ¶¶63 (Count IV), 68 (Count V), 73 (Count VI), 78 (Count VII), 84 (Count VIII), and 90 (Count IX). Thus, the body cam video evidence, which shows what *actually happened* during the events described in Plaintiff's Amended Complaint, is central to all of Plaintiff's claims and can be considered by the Court in its determination of this motion.

### 3. PLAINTIFF FAILED TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

For the reasons set forth below, Plaintiff has failed to state claims for which relief may be granted. Plaintiff's claims should, therefore, be dismissed pursuant to Rule 12(b)(6).

#### a. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD ANY CLAIM AGAINST DEFENDANTS.

##### i. Elements of Plaintiff's Fourth Amendment Claims

The Fourth Amendment protects the rights of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.[34] The Fourth Amendment requires seizures to be based upon probable cause.[35] "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing

[34] *Wesby*, 583 U.S. __, 138 S. Ct. at 585.
[35] *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021).

an offense."[36] However, "officers may briefly detain an individual on the street for questioning, without probable cause, when they possess reasonable, articulable suspicion of criminal activity."[37] "Reasonable suspicion" is a considerably lower threshold to meet than probable cause.[38] It is satisfied when there is "minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances."[39] Moreover, stops may continue beyond their original justification if "further reasonable suspicion, supported by articulable facts, emerges…" *United States v. Zavala*, 541 F.3d 562, 579 (5th Cir. 2008).

To state a Fourth Amendment excessive force claim, a plaintiff must establish that she: (1) suffered a physical injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of the force employed was objectively unreasonable.[40] Additionally, "[t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*."[41] Significantly, "minor, incidental injuries that occur in connection with the use of handcuffs to effect an arrest do not give rise to a constitutional claim for excessive force."[42]

**ii. <u>Elements of Plaintiff's Fourteenth Amendment Claim</u>**

A pretrial detainee who has not been convicted of a crime has a right under the Fourteenth Amendment to the United States Constitution to be protected from impermissible punishment like the denial of or delay in providing certain medical care. To make a claim for

---

[36] *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009).
[37] *Bass*, 996 F.3d at 737 (*citing United States v. Williams*, 880 F.3d 713, 718-19 (5th Cir. 2018)); *see also Terry v. Ohio*, 392 U.S. 1 (1968).
[38] *Bass*, 996 F.3d at 737.
[39] *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993) (*quoting United States v. Wangler*, 987 F.2d 228, 230 (5th Cir. 1993)).
[40] *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022); *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir. 1992); *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989).
[41] *Solis*, 31 F.4th at 981; *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017).
[42] *Freeman*, 483 F.3d at 417; *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).

denial of medical care against Rockwall County, Plaintiff must show that: (1) a County employee violated Plaintiff's clearly established constitutional rights; (2) the violation resulted from a County policy or custom adopted or maintained with objective deliberate indifference; and (3) a direct causal link exists between the municipal policy and the alleged constitutional deprivation.[43]

To establish that she was denied medical care, Plaintiff must show that a Rockwall County employee was subjectively aware of a substantial risk of serious harm to her, and responded to that knowledge with subjective deliberate indifference.[44] A person acts with subjective deliberate indifference if: (1) "he knows that an inmate faces a substantial risk of serious bodily harm," and (2) "he disregards that risk by failing to take reasonable measures to abate it." [45] "The "deliberate indifference" standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. [46] "The state actor's actual knowledge is critical to the inquiry"—a "failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for commendation,' does not rise to the level of deliberate indifference." [47]

Deliberate indifference cannot be inferred from a negligent or grossly negligent response to a substantial risk of harm. [48] "[M]ere disagreement with one's medical treatment is insufficient to show deliberate indifference, as are claims based on unsuccessful medical treatment,

---

[43] *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997) (en banc); *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997); *Anderson v. Dallas County*, 286 Fed. App'x 850, 861 (5th Cir. 2008) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001)).

[44] *Hare v. City of Corinth,* 74 F.3d 633, 648-50 (5th Cir. 1996) (en banc); *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 526 (5th Cir. 1999).

[45] *Anderson v. Dallas Cty., Tex.*, 286 Fed.Appx 850, 860 (5th Cir. 2008) (citing *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

[46] *Board of the County Commissioners of Bryan County, OK v. Brown*, 117 S. Ct. 1382 at 1391 (1997).

[47] *Easter v. Powell*, 467 F.3d 459, 463-64 (5th Cir. 2006).

[48] *Hare*, 74 F.3d at 645, 649.

negligence, or medical malpractice."[49] "Deliberate indifference" describes a state of mind more blameworthy than negligence.[50] A defendant must have been aware of a risk of harm and disregarded that risk by failing to take reasonable steps to prevent it.[51] "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."[52] Deliberate indifference should not be viewed as heightened negligence. It is, rather, "a lesser form of intent."[53] Specifically, "a subjective intent to ***cause*** harm."[54] A person is not deliberately indifferent if they take some reasonable steps to address a risk of harm.[55] Whether steps that were taken to address a risk of harm were successful or effective is irrelevant.

### iii. Elements of Plaintiff's ADA Claim

To establish an ADA discrimination claim, Plaintiff must show that: (1) she has a qualifying disability; (2) she is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of her disability.[56] For a failure-to-accommodate claim, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations.[57]

---

[49] *Delaughter v. Woodall*, 909 F.3d 130, 136 (5th Cir. 2018); *Varndo v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curium).

[50] *Farmer v. Brennan*, 114 S.Ct. 1970 at 1984 (1994).

[51] *Hare*, 74 F.3d 648-49.

[52] *Alderson v. Concordia Parish Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017).

[53] *Leffall v. Dallas ISD*, 28 F.3d 521, 531 (5th Cir. 1994).

[54] *Hare*, 74 F.3d at 649 (emphasis added).

[55] *Id*., at 648-49.

[56] *Wingfield v. Unknown Garner, Co.*, No. 23-4047, 2025 U.S. App. LEXIS 8342, at *11 (5th Cir. 2025) (citation omitted); *Lettieri v. Securus Techs.*, No. 3:24-cv-01065-K, 2024 U.S. Dist. LEXIS 127849, at *2 (N.D. Tex. June 3, 2024) (citation omitted).

[57] *Wingfield*, 2025 U.S. App. LEXIS 8342, at **11-12. If R.K. is attempting to assert an ADA discrimination claim that WISD employees harassed him based on his disability, such a claim is not legally cognizable in the Fifth

**iv. <u>Elements of Plaintiff's Section 504 Claim</u>**

To state a case of discrimination under Section 504, Plaintiff must adequately plead that: (1) she is a qualified individual with a disability; (2) that she has been excluded from participation in, denied the benefits of, or subjected to discrimination under the defendant's program *solely* because of his disability; and (3) the program in question receives federal financial assistance.[58]

**b. THE BODY CAM VIDEOS NEGATE PLAINTIFF'S CLAIMS, AS A MATTER OF LAW.**

The body cam videos of Defendant Walls and former Rockwall County Sheriff's Deputy Jose Acosta Mejia contradict virtually every material allegation of fact in Plaintiff's Amended Complaint, and establish, as matter of law, that there was no violation of Plaintiff's Fourth Amendment rights to be free from unlawful seizure and excessive force; no violation of Plaintiff's Fourteenth Amendment right to adequate medical care; no violations of the ADA or Section 504; and no actionable negligence by County employees.

First, the videos establish that Deputy Walls detained Plaintiff and her companion Micah Ray based on the probable cause (or, at the least, reasonable suspicion) that Plaintiff and Ray were trespassers on the property. This was based on the landowners' reports to Walls that they had not given permission for anyone to be on the property, and Micah Ray's admission that he did not have permission to be on the property. *See* Exhibit A, Walls body cam video at 14:40 to 14:42; 14:43 to 14:45; 14:48 to 14:52; and 14:57:45 to 14:58:10. Further, Plaintiff was detained

Circuit. *Campbell v. Lamar Inst. Of Tech.*, 842 F.3d 375, 382 n.5 (5th Cir. 2016); *Jeudy v. Hous. Cmty. Coll.*, No. 4:23-CV-4758, 2024 U.S. Dist. LEXIS 222655, at **15-16 (S.D. Tex. Aug. 7, 2024) (citing *Campbell*; *Bradyn S. v. Waxahachie Indep. Sch. Dist.*, No. 3:18-CV-2724-L, 2019 U.S. Dist. LEXIS 139384, 2019 WL 3859301, at *8 (N.D. Tex. Aug. 16, 2019)) ("the Fifth Circuit does not recognize a claim for harassment based on disability"). Though unclear, insofar as R.K. is asserting an ADA disparate treatment discrimination claim, those, too, are not cognizable claims. *Jeudy*, 2024 U.S. Dist. LEXIWS 222655, at **15-16.

[58] *Joganik v. E. tex. Med. Ctr.*, No. 6:19-CV-517-JCB-KNM, 2021 U.S. Dist. LEXIS 251682, at *24 (E.D. Tex. Dec. 14, 2021) (report and recommendation) (citations omitted) (emphasis added).

for a little over an hour, not three hours. *See* Exhibit A, Walls body cam video at 14:52 to 16:00; and Acosta-Mejia body cam video at 15:07 to 16:02. She was also quickly (within two minutes) advised of the reason for the Deputies' presence on the property and why she and Micah Ray were being detained. *See* Exhibit A, Walls body cam video at 14:52:47 to 14:55. *Almost immediately* after Plaintiff asked Deputy Walls to handcuff her in the front rather than the back because of her medical device and condition, Deputy Walls did so, once he had confirmed she had no weapons. *See* Exhibit A, Walls body cam video at 14:55 to 14:56:07. Further, when Ms. Rascon began to exhibit signs of distress, Deputy Walls asked her if she wanted medical assistance and, when she said she did, he *immediately (within mere seconds)* called for an ambulance to come to the scene. *See* Exhibit A, Walls body cam video at 15:13:05 to 15:13:45. Emergency medical personnel from the City of Wylie responded to the scene and administered substantial medical care to Plaintiff until she was stabilized and calm. *See* Exhibit A, Acosta-Mejia body cam video at 15:28 to 16:01:10. The same emergency medical personnel then offered to transport Plaintiff to the hospital if she wanted, and she expressly declined that offer *See* Exhibit A, Acosta-Mejia body cam video at 15:55:40 to15:56:30; and 15:59:25 to 16:00.

The indisputable facts shown on the body cam videos establish, as a matter of law, that Plaintiff was not detained without probable cause or reasonable suspicion, and that no excessive force was applied to her. They further establish that Defendants did not exhibit deliberate indifference to any known, serious medical need of Plaintiff, and did not deny Plaintiff any benefits because of any disability, nor fail to accommodate any known disability of Plaintiff. It follows that Plaintiff's claims against Deputy Walls and Deputy Williams for failing to intervene to prevent a Constitutional violation also fails. The body cam videos also establish, as a matter of

law, that Defendants did not act negligently at any time in their interactions with Plaintiff. As such, all of Plaintiffs' claims against Defendants must be dismissed.

### c. PLAINTIFF HAS FAILED TO ADEQUATELY PLEAD ROCKWALL COUNTY'S LIABILITY UNDER SECTION 1983.

Governmental entities such as Rockwall County are not subject to *respondeat superior* liability under 42 U.S.C. Section 1983 solely because an employee may have violated the law.[59] Rather, to hold the County liable under Section 1983, in addition to alleging and proving an underlying Constitutional violation occurred, Plaintiff must allege and prove that the constitutional deprivation was caused by an official Rockwall County policy, custom, or practice.[60]

#### i. Requirement of Policy, Custom, or Practice

Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.[61] Because *respondeat superior* liability does not apply, proof of these three elements is necessary in order to distinguish individual violations perpetrated by local government employees from those which can be fairly identified as actions of the government itself.[62] Requiring proof of a policy ensures that a municipality is held liable only for those deprivations resulting from the decisions of those officials whose acts may fairly be said to be those of the municipality.[63] A plaintiff who claims to have been injured due to an officially promulgated policy must specifically identify the policy at issue and must show a direct causal link between

---

[59] *Monell v. Department of Social Services*, 436 U.S. 658 at 692 (1978); *Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985).
[60] *Monell*, 436 U.S. 658.
[61] *Piotrowski v. City of Houston*, 231 F.3d 567, 578 (5th Cir. 2001) (citing *Monell,* 436 U.S. at 694).
[62] *Id*.
[63] *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403-04 (1997) (citing *Monell*, 436 U.S. at 694).

the municipal policy and the constitutional deprivation.[64] "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation…cannot be conclusory; it must contain specific facts.'"[65]

In the absence of proof that a deprivation was caused by an officially promulgated municipal policy, a plaintiff may establish municipal liability through proof that a deprivation was caused by a custom, that is, a practice that is so widespread as to have the force of law.[66] Isolated incidents do not establish the type of persistent, often repeated, constant violations that constitute the custom required for municipal liability under Section 1983.[67]

In order to impose municipal liability under Section 1983 based on a custom or practice, a plaintiff must demonstrate "a pattern of abuses that transcends the error made in a single case."[68] Prior incidents used to establish a pattern must have occurred for so long or so frequently that the course of conduct warrants attribution to the municipality of knowledge that the objectionable conduct is the expected, accepted practice of its employees.[69] Additionally, a pattern requires similarity and specificity, and prior incidents cannot simply include any and all

---

[64] *Piotrowski,* 237 F.3d at 580; *see also Whitley v. Harina*, 726 F.3d 631, 648-49 (5th Cir. 2013) (dismissing a claim when plaintiff made no specific factual allegations about the county's policies).

[65] *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (*quoting Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (footnote omitted).

[66] *Piotrowski,* 237 F.3d at 579 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).

[67] *Id.* at 581 (citing *Bennett* v. *City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)); *see also Zarnow* v. *City of Wichita Falls Tex.*, 614 F.3d 161, 169 (5th Cir. 2010) (a custom "consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the conduct.").

[68] *Id*. at 582 (citations omitted); *see also Zarnow*, 614 F.3d at 169; *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009).

[69] *Peterson*, 588 F.3d at 850-51; *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 396 (5th Cir. 2017), *as revised* (Mar. 31, 2017).

bad or unwise acts, but rather they must point to the specific violation in question.[70] This standard is obviously "a high one to meet."[71]

**ii. Claims Based on Failure to Train/Supervise**

In regard to municipal liability claims based on a theory of deficient training of employees, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[72] Only when a failure to train reflects a deliberate or conscious choice by a municipality can a city be liable for such a failure under Section 1983.[73] To prevail on a failure to train theory a plaintiff must demonstrate: (1) that the municipality's training policy procedures were inadequate; (2) that the municipality was deliberately indifferent in adopting its training policy; and (3) that the inadequate training policy directly caused the violations in question.[74] In order for liability to attach based on an inadequate training claim, Plaintiff must allege with specificity how a particular training program of the County is defective.[75]

In a Section 1983 claim for failure to supervise, a plaintiff must show that: (1) the supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of the plaintiffs rights; and (3) the failure to supervise amounts to deliberate indifference.[76]

---

[70] *Id.* at 851 (citing *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).
[71] *Miranda v. Bexar Cnty. by & Through Duly Appointed Sheriff of Bexar Cnty.,* No. SA-23-CV-00547-XR, 2024 WL 314055, at *3 (W.D. Tex. Jan. 26, 2024).
[72] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).
[73] *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009).
[74] *Zarnow* v. *City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010); *Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014).
[75] *Id*. (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)).
[76] *Goodman*, 571 F.3d at 395 (citing *Smith v. Brenoettsy*, 158 F.3d 908, 911-912 (5th Cir. 1998)); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

### iii. <u>Plaintiff Fails to Adequately Plead a Municipal Liability Claim</u>

Review of Plaintiff's Complaint reveals that Plaintiff makes no specific factual allegations in support of a claim of an unlawful, officially promulgated Rockwall County policy that was the proximate cause of the violation of her rights, nor any specific factual allegations establishing a claim of an unlawful, widespread, consistent custom or practice that was the proximate cause of the violation of her rights. Rather, Plaintiff makes conclusory statements regarding alleged policies or practices that are simply boilerplate recitations of the general requirements for municipal liability required by Section 1983 and that only relate to the incident made the basis of this suit, not to alleged numerous, prior, and similar incidents of misconduct by Rockwall County personnel. *See* Dkt. 18, pp. 20-21, ¶¶79, 81-83. The same is true regarding Plaintiff's allegations of inadequate training/supervision, which are merely general, conclusory recitations of the elements of a cause of action for inadequate training and supervision, not supported by any specific facts regarding how and why Rockwall County's training/supervision policies are supposedly deficient. *Id.*, at p. 16, ¶62; and pp. 20-21, ¶¶80, 82-83.[77]

Such pleadings are insufficient to state a valid claim for relief for Rockwall County's liability for alleged constitutional violations under Section 1983.[78] As such, all of Plaintiff's Section 1983 claims against Rockwall County must be dismissed.

Additionally, as shown in the body cam video footage discussed, *supra*, Plaintiff has failed to adequately plead a cause of action that any Rockwall County employee violated Plaintiff's Constitutional rights. In the absence of an underlying Constitutional violation, there

---

[77] Plaintiff's own pleadings confirm that she is seeking to impose liability on Rockwall County under Section 1983 based on a *respondeat superior* theory. "Rockwall County is a proper defendant for Plaintiff's ADA Title II, Rehabilitation Act § 504, Monell [sic.], and Texas Tort Claims Act claims, as its deputies and employees acted within the scope of their employment during the events giving rise to this action." Dkt. 18, p. 4, ¶9.

[78] *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *Peña*, 879 F.3d at 622; *Davidson*, 848 F.3d at 396; *Piotrowski*, 237 F.3d at 582; *Zarnow*, 614 F.3d at 169. *Peterson*, 588 F.3d at 850-51.

can be no liability for Rockwall County, as a matter of law. [79] All of Plaintiff's Section 1983 claims against the County must therefore be dismissed.

#### d. PLAINTIFF FAILS TO ADEQUATELY PLEAD AN EXCESSIVE FORCE CLAIM AGAINST DEPUTY WALLS OR DEPUTY WILLIAMS.

To state an excessive force claim, a plaintiff must establish that she: (1) suffered a physical injury; (2) which resulted directly and only from a use of force that was clearly excessive to the need; and (3) the excessiveness of the force employed was objectively unreasonable.[80] Additionally, "[t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*."[81] Significantly, "minor, incidental injuries that occur in connection with the use of handcuffs to effect an arrest do not give rise to a constitutional claim for excessive force."[82]

Plaintiff has failed to state a claim for excessive force against Deputy Walls and Deputy Williams because she only alleges *de minimis* injuries allegedly caused by the use of handcuffs as the basis for her excessive force claim. Specifically, Plaintiff alleges that Deputy Walls' use of handcuffs resulted in the dislodgement and contamination of her port line, which caused an infection requiring intravenous anti-biotics, a disruption of her cardiac therapy regimen, and moving of her port line. *See* Dkt. 18, pp. 13-14, ¶¶49-52. No other injury is alleged to have occurred. Plaintiff does not assert any significant complications arising from the purported

---

[79] *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).
[80] *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022); *Trammell v. Fruge*, 868 F.3d 332, 340 (5th Cir. 2017); *Knight v. Caldwell*, 970 F.2d 1430, 1432-33 (5th Cir. 1992); *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir. 1989).
[81] *Solis*, 31 F.4th at 981; *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007); *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017).
[82] *Freeman*, 483 F.3d at 417; *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009).

infection, from the interruption of her cardiac therapy, or the moving of her port line. Such alleged injuries are properly characterized as *de minimis*.[83]

Plaintiff's Amended Complaint, therefore, fails to adequately plead a claim for excessive force.[84] The Court should dismiss Plaintiff's excessive force claim against Deputy Walls and Deputy Williams pursuant to Rule 12(b)(6).

#### e. PLAINTIFF FAILS TO ADEQUATELY PLEAD A FAILURE TO INTERVENE CLAIM AGAINST DEPUTY WALLS OR DEPUTY WILLIAMS.

"An officer is liable for failure to intervene only when that 'officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act.'"[85] "To trigger bystander liability successfully, the plaintiff must show more than 'mere presence in the vicinity of the violation,' he must also show that the 'officer 'acquiesced in' the alleged constitutional violation.'"[86] If a plaintiff does not raise a plausible excessive force claim, there is no constitutional violation from which a defendant officer failed to protect a plaintiff.[87] Failure to intervene claims should be dismissed when there is no underlying excessive force claim because the alleged injury was a *de minimis* injury.[88]

---

[83] *See, e.g.*, *Westfall v. Luna*, 903 F.3d 534-549-50 (5th Cir. 2018) (holding that abrasions, bruises, bloody urine, high blood pressure, and high heart rate are *de minimis* injuries that will not support an excessive force claim).
[84] *Freeman*, 483 F.3d at 417; *Deville*, 567 F.3d at 168.
[85] *Roberson v. DeAnda*, No. 25-50093, 2026 U.S. App. LEXIS 14486, at *11 (5th Cir. 2026) (per curiam) (quoting *Joseph ex rel. Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).
[86] *Id*. (citing *Joseph*, 981 F.3d at 343 (quoting *Whitley*, 726 F.3d at 647)).
[87] *Nolan v. Buchanan*, No. 25-1144 SECTION P, 2025 U.S. Dist. LEXIS 217648, at *14-15 (W.D. La. Oct. 6, 2025) (citing *Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 845 (5th Cir. 2011) (finding that because the plaintiff's excessive force claim failed against one defendant, that the plaintiff "failed to establish a use of excessive force from which the other officers could or should have protected him"); *Griffin v. City of Sugarland, Texas*, 787 F. App'x 244, 245 (5th Cir. 2019) ("Because his excessive force claim fails because there was no violation of his constitutional rights, Griffin's bystander liability theory also fails."), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 215355 (W.D. La. Oct. 31, 2025).
[88] *Fortman v. Gregg Cnty. Sheriff's Off.*, No. 6:24-cv236, 2024 U.S. Dist. LEXIS 181177, at *8-9 (E.D. Tex. Aug. 23, 2024) (citing *Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997) (affirming of excessive force claim where injury consisting of "a sore, bruised ear lasting for three days" was de minimis); *Welsh v. Correct Care*

Plaintiff has failed to state a claim for failure to intervene against Deputy Walls or Deputy Williams because, as explained *supra*, she has failed to adequately plead a claim for unlawful seizure, excessive force, or denial of medical care. Because Plaintiff does not raise a plausible unlawful seizure, excessive force, or denial of medical care claim, there is no constitutional violation from which Deputy Walls and Deputy Williams failed to protect Plaintiff. Plaintiff's Amended Complaint, therefore, fails to adequately plead a claim for failure to intervene and should be dismissed pursuant to Rule 12(b)(6).

#### f. DEPUTY WALLS AND DEPUTY WILLIAMS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S CLAIMS.

##### i. The Elements of Qualified Immunity

Qualified immunity is a robust defense which "protects all but the plainly incompetent or those who knowingly violate the law."[89] Qualified immunity represents the norm, and it should be denied only in rare circumstances.[90]

Officials exercising discretionary authority are entitled to the defense of qualified immunity unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized the conduct was prohibited by the federal law on which the suit is founded.[91] The question is whether a reasonable official could have believed that the actions of the defendant were lawful in light of clearly established law and the information the

---

*Recovery Solutions*, 845 F. App'x 311, 318 (5th Cir. 2021) (bruising and swelling lasting for one week were de minimis); *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (sore muscles, scratches, abrasions, and bruises are de minimis injuries and are insufficient to support an excessive force claim)), *report and recommendation adopted*, 2024 U.S. Dist. LEXIS 180518 (E.D. Tex. Oct. 2, 2024).

[89] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (citation omitted).

[90] *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019); *see also Morrow v. Meachum*, 917 F.3d 870, 876 (5th Cir. 2019) (the Supreme Court holds that courts "must think twice before denying qualified immunity").

[91] *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000); *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997).

defendant possessed at the time.[92] If reasonable officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity.[93]

It is the plaintiff's burden to plead and prove specific facts overcoming qualified immunity.[94] When a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that: (1) the defendant violated a statutory or constitutional right; and (2) the right was "clearly established" at the time of the challenged conduct.[95]

The "clearly established" question is "a doozy" for plaintiffs, who bear the heavy burden of demonstrating that relevant precedent has placed the constitutional question beyond debate.[96] At present, only U.S. Supreme Court precedent unequivocally "qualif[ies] as controlling authority for the purposes of qualified immunity."[97] Additionally, clearly established law arises only from holdings, not *dicta*.[98] The Court must ask whether the law so clearly and unambiguously prohibited the defendant's conduct that every reasonable official would understand that the defendant's actions violated the law.[99]

"It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality."[100] "Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context; rather,

---

92 *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).
93 *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
94 *Elliot v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985).
95 *Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017). The Court may determine which prong of the qualified immunity analysis to address first. *Id*.
96 *Morrow*, 917 F.3d at 874; *see also D.C. v. Wesby*, 583 U.S. 48, 62-63 (2018).
97 *Wesby*, 583 U.S. at 66, n. 8 (citing *Reichle v. Howards*, 566 U. S. 658, 665-666 (2012) (reserving the question whether court of appeals decisions can be "a dispositive source of clearly established law"); *see also, e.g.*, *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (noting that neither the district court nor the plaintiff had identified any on-point Supreme Court case, and expressing uncertainty as to whether circuit court precedent could clearly establish law for the purposes of § 1983); *Nerio v. Evans*, 974 F.3d 571, 576 n.2 (5th Cir. 2020) ("Although we know the Supreme Court's decisions can clearly establish the law, the Supreme Court has never held that our decisions can do the same.").
98 *Morrow*, 917 F.3d at 875.
99 *Turner*, 848 F.3d. at 686.
100 *Rich*, 920 F.3d at 294.

the inquiry must focus on whether a right is clearly established as to the specific facts of the case."[101] "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*."[102] The Fifth Circuit has repeatedly rejected attempts to defeat assertions of qualified immunity by applying general concepts of constitutional law to specific factual circumstances, or by relying on case law from other circuits or from district courts.[103]

**ii. <u>Deputy Walls and Deputy Williams Are Entitled to Qualified Immunity</u>.**

As explained above, *and as demonstrably shown on the body cam videos of the incident made the basis of this suit*, Plaintiff has failed to adequately plead that Deputy Walls or Deputy Williams violated Plaintiff's Constitutional rights by unlawfully detaining her, using excessive force, or denying her medical care. Certainly, Plaintiff has failed to plead that Deputy Walls or Deputy Williams engaged in any conduct that every reasonable official would understand violated the law, and the body cam videos establish beyond dispute that they engaged in no such conduct.[104] If follows that Deputy Walls and Deputy Williams are entitled to qualified immunity from any claim for failing to intervene to prevent a Constitutional violation. Deputy Walls and Deputy Williams are thus entitled to qualified immunity as to all of Plaintiff's claims.

---

[101] *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015); *see also Morgan*, 659 F.3d at 372 ("the Supreme Court has held that generalizations and abstract propositions are not capable of clearly establishing the law").
[102] *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis original) (citation omitted).
[103] *E.g.*, *Vann v. City of Southhaven*, 884 F.3d 307, 310 (5th Cir. 2018) (rejecting plaintiff's reliance on out of circuit case law); *Turner*, 848 F.3d at 686-87 (rejecting plaintiff's attempt to apply general First Amendment protections to specific factual circumstances; also rejecting plaintiff's reliance on cases from three sister circuit courts and some district courts because neither the Supreme Court nor the Fifth Circuit had determined whether First Amendment protection extends to the situation at issue in the lawsuit); *Vincent*, 805 F.3d at 548, 550-51 (rejecting plaintiff's reliance on out of circuit cases and holding that Supreme Court decisions identifying a general constitutional right were not sufficient to clearly establish law in the circumstances presented).
[104] *Turner*, 848 F.3d. at 68; *Pierce*, 117 F.3d at 8826.

WHEREFORE, PREMISES CONSIDERED, Defendants Rockwall County, Texas, Deputy Jeffrey Walls, and Deputy Trey Williams pray that the Court grant this Motion to Dismiss for improper venue or, alternatively, to transfer; and/or grant this motion for dismissal with prejudice of Plaintiff's claims against Rockwall County, and Deputy Walls and Deputy Williams, as explained above (including on the basis of qualified immunity); Defendants further pray that Plaintiff take nothing by this suit, that all relief requested by Plaintiff be denied, and that Defendants recover all costs of suit and attorney's fees, as well as for such other and further relief, both general and special, at law or in equity, to which Defendants may show themselves to be justly entitled.

Respectfully submitted,

*/s/ Stephen D. Henninger*

**STEPHEN D. HENNINGER**
State Bar No. 00784256
henninger@mdjwlaw.com
**FRANCISCO J. VALENZUELA**
State Bar No. 24056464
valenzuela@mdjwlaw.com
**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
9111 Cypress Waters Blvd., Suite 250
Dallas, Texas 75019
214-420-5500
214-420-5501 (fax)
**ATTORNEYS FOR DEFENDANTS**
**ROCKWALL COUNTY, TEXAS, DEPUTY JEFFREY WALLS. AND DEPUTY TREY WILLIAMS**

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2026, I electronically filed the foregoing document with the Clerk of the Court through the ECF system and an email notice of the electronic filing was sent to all attorneys and parties of record.

*/s/ Stephen D. Henninger*

**STEPHEN D. HENNINGER**